IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


MARY ANN WILLIAMS                                             PLAINTIFF


        v.                           CIVIL NO. 08-2055


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                               DEFENDANT


**MEMORANDUM OPINION**

        Plaintiff, Mary Ann Williams, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claims for period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under the provisions of Title II and XVI

of the Social Security Act (Act).  In this judicial review, the court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision.  *See*

42 U.S.C. § 405(g).

I.      **Procedural Background:**

        Plaintiff protectively filed her current applications for DIB and SSI on August 1, 2005,

alleging an inability to work since November 3, 2002, due to neck, lower back and hip pain, left

shoulder and shoulder blade pain, fibromyalgia, scoliosis, tendonitis, left chest pain, degenerative

joint disease, hand and foot pain, carpal tunnel syndrome in both wrists, Hepatitis C and liver

problems and depression with suicidal thoughts.  (Tr. 48-50, 58-60, 114).  For DIB purposes,

plaintiff maintained insured status through December 31, 2003.  (Tr. 13).   An administrative

hearing was held on May 24, 2007, at which plaintiff appeared with counsel and testified. (Tr. 297-316).

By written decision dated July 30, 2007, the ALJ found that during the relevant time period plaintiff had an impairment or combination of impairments that were severe. (Tr. 15). Specifically, the ALJ found plaintiff had the following severe impairments: status post residual rotator cuff problems with limited use of the left arm and shoulder; and degenerative disc disease. However, after reviewing all of the evidence presented, he determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found plaintiff retained the residual functional capacity (RFC) to lift and/or carry ten pounds frequently, twenty pounds occasionally; and to sit for a total of six hours and stand for a total of six hours in an eight-hour workday with normal breaks. (Tr. 16). The ALJ found plaintiff cannot reach overhead with her left arm. As such, the ALJ found plaintiff has the ability to perform light level work on a sustained basis. With the help of a vocational expert, the ALJ determined plaintiff could perform other work as a cashier, a fast food worker and a clerical worker. (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on April 9, 2008. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 4). Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. 7,8).

II.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

A.     **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

AO72A
(Rev. 8/82)

gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

**III.   Discussion:**

   **A.      Insured Status:**

   In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability.  42 U.S.C. § 416(i)(3)(B).  Plaintiff last met this requirement on December 31, 2003.  (Tr. 13). Accordingly, regarding plaintiff's DIB application, the overreaching issue is the question of whether plaintiff was disabled during the relevant time period of November 3, 2002, her alleged onset date of disability, through December 31, 2003, the last date she was in insured status under Title II of the Act.

   In order for plaintiff to qualify for DIB she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984).  The medical evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status is

-4-

relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id. at* 1169.

As for plaintiff's SSI application, there are no insured status requirements. The relevant time period for this application is August 1, 2005, the date the application was filed, through the date of the ALJ's decision dated July 30, 2007. 20 C.F.R. § 416.501.

**B.      RFC Assessment:**

After reviewing the record, the undersigned is particularly troubled by the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

The Code of Federal Regulations sets forth additional factors, to assist the ALJ in determining what weight should be afforded to the opinion of a given physician, including a treating physician. The Regulations encourage the ALJ to afford more weight to those opinions which are "more consistent with the record as a whole." 20 C.F.R. § 416.927(d)(4). More weight is also to be extended to "the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 416.927(d)(5). When presented with a treating physician's opinion, the ALJ is obligated to examine the nature and extent of the treatment relationship, attributing weight to such an opinion that is proportionate to the knowledge that the medical provider has about the plaintiff's impairments. 20 C.F.R. § 416.927(d)(2)(ii). Additionally, the ALJ must either attempt to reconcile the medical reports of the treating physicians with those of the consulting physicians, or direct interrogatories to each of the physicians to obtain a more substantiated opinion of the plaintiff's capabilities and the onset of her disabilities. See *Smith v. Schweiker,* 728 F.2d 1158, 1163 (8th Cir.1984); *O'Leary v. Schweiker,* 710 F.2d 1334, 1342 (8th Cir.1983); *Funderburg v. Bowen* 666 F.Supp.1291, 1298 -1299 (W.D.Ark.,1987).

In the present case, the ALJ determined plaintiff maintained the RFC to lift and/or carry ten pounds frequently, twenty pounds occasionally; and to sit for a total of six hours and stand for a total of six hours in an eight-hour workday with normal breaks. The ALJ found plaintiff cannot reach overhead with her left arm. As such, the ALJ found plaintiff has the ability to perform light level work on a sustained basis. It appears, the ALJ relied on the RFC assessments completed by non-examining, medical consultants when determining plaintiff's RFC. (Tr. 155, 196). We first note that the opinion of a consulting physician who examined the plaintiff once or

-6-

AO72A
(Rev. 8/82)

not at all does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). We would further point out in the body of the decision, the ALJ found plaintiff had limitations regarding her ability to overhead reach with her left arm, as well as, manipulative limitations with regard to reaching, handling, fingering and feeling.[1] (Tr. 19). We would point out the hypothetical questions proposed to the vocational expert did not include the manipulative limitations. (Tr. 312-315). This is troubling as the jobs the ALJ found plaintiff could perform, including that of a cashier and fast food worker, require frequent to constant reaching, handling and fingering. *See* DICOT §§ 211.462-010, 311.472-010 *at* www.westlaw.com.

In supporting his RFC finding, the ALJ referred to a January 28, 2005, progress note from Dr. Joy L. Meyer. The ALJ states the following, "...Dr. Meyer stated the claimant's symptoms were controlled with medications and that she was able to work using her dominant, right hand but could not perform work which required reaching overhead with the left arm." (Tr. 19). A review of the January 28, 2005, progress note shows Dr. Meyer states plaintiff continues to have pain secondary to the lack of funds to be under treatment. (Tr. 163). While Dr. Meyer noted plaintiff had some relief of pain with medication, she also noted plaintiff took multiple medications that had to be stopped due to side effects. Dr. Meyer diagnosed plaintiff with active radicular symptoms of the C6 root and instability of the shoulder. Dr. Meyer noted again plaintiff was unable to afford treatment but should undergo prolotherapy treatments for the neck and shoulder. Plaintiff was given samples of Celebrex, Cymbalta and ten Lortab. Dr. Meyer

---

[1]The non-examining medical consultants RFC assessments also included limitations with plaintiff's ability to reach, handle, finger and feel. (Tr. 158).

AO72A
(Rev. 8/82)

believed plaintiff's injury was causally related  and opined plaintiff "has had definite functional disability as a result of the accident."  (Tr. 164).

In determining plaintiff could perform light work, the ALJ also discredited Dr. Terry E. Brackman's, plaintiff's treating physician, lumbar spine RFC assessment, opining plaintiff could do less than sedentary work, because he found Dr. Brackman to be a pain specialist and that part of Dr. Brackman's opinion rested at least in part on an assessment of an impairment outside of his expertise.  (Tr. 20, 233-237).  The ALJ also found that Dr. Brackman's opinion was not consistent with the record as a whole.  A review of the medical evidence shows Dr. Brackman treated plaintiff for all of her impairments between March 6, 2006 to April 6, 2007.[2]  (Tr. 242-288).  Dr. Brackman's notes consistently indicate plaintiff has chronic spastic torticollis in the neck region, chronic left shoulder pain and chronic low back pain with radiculopathy.  In September of 2006, Dr. Brackman noted plaintiff also had a positive ANA with centromere formation which he believed might be early scleroderma indications.  (Tr. 260).  On March 9, 2007, Dr. Brackman noted when financially available plaintiff needed to undergo a MRI of both her cervical and lumbar spine.  (Tr. 246-247).  Based on the above, we do not find substantial evidence to support the ALJ's RFC determination.

After thoroughly reviewing the record, we find remand necessary so that the ALJ can more fully and fairly develop the record regarding plaintiff's neck and low back impairments. The non-examining medical consultants that completed the RFC assessments relied upon by the ALJ were not privy to the medical records dated after August 21, 2006.  It also appears that Dr.

---

[2]These impairments include chronic pain in the neck, left shoulder and pectoralis major muscle; a grade I AC separation of the shoulder; C5-6 degenerative disk disease, chronic low back pain with radiculopathy, Hepatitis, anxiety, depression, gastroesophageal disease and fibromyalgia.  (Tr. 242-288).

AO72A
(Rev. 8/82)

Brackman felt plaintiff needed to undergo MRIs of the cervical and lumbar spine to get an accurate picture of plaintiff's impairments.

We strongly suggest that the ALJ order a consultative exam, in which, the consultative examiner should be asked to review the medical evidence of record, perform a physical examination and appropriate testing, including a MRI of plaintiff's cervical and lumbar spine, needed to properly diagnosis plaintiff's condition and level of pain, and complete a medical assessment of plaintiff's ability to perform work related activities for the relevant time period in question. *See* 20 C.F.R. §§ 404.1517, 416.917.

We further note that the medical evidence is also somewhat ambiguous with regard to plaintiff's mental limitations and her mental RFC. On remand the ALJ is directed to address interrogatories to the physicians who have evaluated and/or treated plaintiff asking the physicians to review plaintiff's medical records and complete a mental RFC assessment regarding plaintiff's capabilities during the time period in question. If further development of the record on the issue of plaintiff's mental RFC is necessary, the ALJ may also order a consultative mental exam, in which, the consultative examiner should be asked to review the medical evidence of record, perform examinations and appropriate testing needed to properly diagnosis plaintiff's condition(s), and complete a medical assessment of plaintiff's mental abilities to perform work related activities. *See* 20 C.F.R. §§ 404.1517, 416.915.

With this evidence, the ALJ should then re-evaluate plaintiff's RFC and specifically list in a hypothetical to a vocational expert any limitations that are indicated in the RFC assessments and supported by the evidence.

AO72A
(Rev. 8/82)

**IV.**    **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED  this 25th day of August 2009.


/s/   *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-10-